**William J. and Debra A. NEWMAN, Plaintiffs,**

v.

**EXXON CORPORATION and Francis Quinn, Defendants.**

Civ. A. No. 88–17–JLL.

United States District Court, D. Delaware.

Oct. 5, 1989.

Bayard J. Snyder of Phillips & Snyder, Wilmington, Del., for plaintiffs.

James F. Harker and James S. Yoder of Herlihy, Harker & Kavanaugh, Wilmington, Del., for defendants.

MEMORANDUM OPINION

LATCHUM, Senior District Judge.

I. PROCEDURAL BACKGROUND

This diversity action arises out of a motor vehicle accident which occurred on December 19, 1986. Plaintiff William Newman ("William"), while at the wheel of a disabled vehicle owned by his brother, was coasting downhill in the northbound lane of Rt. 13 when the vehicle was struck in the rear by a tanker truck. The tanker truck was owned by defendant Exxon Corporation ("Exxon"), and was driven by Exxon's

employee, defendant Francis Quinn ("Quinn").

William allegedly suffered injuries as a result of the collision. He brought this suit charging Quinn with negligence, and asserting that Exxon was vicariously liable for Quinn's negligence under the doctrine of *respondeat superior.* (*See* Docket Item ["D.I."] 1 at ¶¶ 5–12.) William's wife, Debra Newman ("Debra"), joined in the action as a party plaintiff. Debra's claim against defendants is for loss of consortium. (*See* D.I. 1 at ¶¶ 13–14.)

The case was tried before a jury on July 17 through July 19, 1989. The jury found that: (1) defendants Quinn and Exxon were negligent; (2) William sustained damages of $10,000 on his personal injury claim; (3) Debra suffered damages of $10,000 on her claim for loss of consortium; and (4) William was contributorily negligent, his negligence comprising 50% of the total fault for the accident. (D.I. 58 [Verdict Sheet].) In accordance with the Delaware comparative negligence statute, the Court reduced the awards to William and Debra by 50%, reflecting the comparative fault attributed to William. *See* 10 *Del.C.* § 8132. Hence the Court entered judgment against defendants in favor of William for $5,000, and in favor of Debra, also for $5,000. (*See* D.I. 56.)

Presently before the Court is a motion filed by defendants for judgment notwithstanding the verdict ("judgment n.o.v."), on Debra's loss of consortium claim.[1] (D.I. 59.) For the reasons set forth in this Opinion, defendants' motion will be granted.

## II. LEGAL STANDARD FOR JUDGMENT N.O.V.

Rule 50(b), Fed.R.Civ.P., authorizes the entry of a judgment n.o.v. in appropriate circumstances. The legal standard governing a motion for judgment n.o.v. is identical

to that for a directed verdict under Rule 50(a), Fed.R.Civ.P.[2] *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 n. 5 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524 at pp. 541–52 & n. 27, § 2537 at p. 599 (1971) [hereinafter *Wright & Miller*]. It is a rather stringent standard. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 119 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

"In considering a motion for judgment n.o.v., a court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury." *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 113 (3d cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). Although a court in viewing the evidence of record may have reached a different conclusion from that reached by the jury, that alone is not reason to enter judgment n.o.v. Entry of judgment n.o.v. is appropriate only where the court finds, as a matter of law, that no reasonable jury could have found in favor of the nonmoving party—that is, that no reasonable jury could have found for plaintiff Debra Newman. *See, e.g., National Controls Corp. v. National Semiconductor Corp.*, 833 F.2d 491, 495 (3d Cir.1987); *Aloe Coal v. Clark Equipment Co.*, 816 F.2d at 113; *Marsh v. Interstate and Ocean Transport Co.*, 521 F.Supp. 1007, 1008 (D.Del.1981).

■ The Court must view all evidence, and any inferences reasonably drawn therefrom, in a light most favorable to the nonmoving party. *Bhaya v. Westinghouse Electric Corp.*, 832 F.2d 258, 259, 260, 262 (3d Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Acosta v. Honda Motor Co.*, 717 F.2d 828,

---

1. The Court is not asked to disturb the $5,000 judgment in favor of William.

2. In fact, a motion for a directed verdict is a prerequisite to moving for judgment n.o.v. *See* Rule 50(b), Fed.R.Civ.P. ("[n]ot later than 10 days after entry of judgment, *a party who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon

set aside" [emphasis added] ). *See also Acosta v. Honda Motor Co.*, 717 F.2d 828, 831 (3d Cir. 1983); 5A J. Moore & J.D. Lucas, *Moore's Federal Practice* ¶ 50.08 (2d ed. 1989). In the instant case, the defendants moved for a directed verdict at the close of evidence, thereby preserving their right to subsequently move for judgment n.o.v.

839–40 (3d Cir.1983); *Massarsky v. General Motors,* 706 F.2d at 117. The jury's verdict, however, can withstand a motion for judgment n.o.v. only if it is based upon more than a mere scintilla of evidence. *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978); *G.H. & M. Construction and Development Co. v. Municipal Sewer and Water Auth. of Cranberry Township,* No. 80–657–G (W.D.Pa. March 23, 1983); 9 *Wright & Miller* § 2524 at pp. 542–43 & n. 30, p. 547. In this case, the Court's task is to decide whether the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to Debra on her loss of consortium claim. *See, e.g., National Controls v. National Semiconductor,* 833 F.2d at 495; *Patzig v. O'Neil,* 577 F.2d at 846; *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir. 1969).

Having outlined the legal standard for entry of judgment n.o.v., the Court will now review the elements of a loss of consortium claim, prior to determining whether the jury's verdict thereon was patently unreasonable.

## III. ELEMENTS OF A CLAIM FOR LOSS OF CONSORTIUM

■ As the plaintiff in this action, Debra bore the burden of proving at trial, by a preponderance of the evidence, all of the elements of a loss of consortium claim. Under Delaware law, a claim for loss of consortium consists of three elements: (1) the party asserting the claim [i.e. Debra] must have been married to the person who suffered the physical injury [i.e. William] at the time the injury occurred; (2) as a result of the physical injury, the spouse asserting the loss of consortium claim [i.e. Debra] must have been deprived of some benefit which formerly existed in the marriage; and (3) the physically injured spouse [i.e. William] must have had a valid cause of action for recovery against the tortfeasors [i.e. Quinn and Exxon]. *Jones v. Elliott,* 551 A.2d 62, 63–64 (Del.1988); *Lacy v. G.D. Searle & Co.,* 484 A.2d 527, 532 (Del.Super. 1984).

At the present stage of this litigation, the defendants do not dispute that the first and third of the above-named elements are satisfied. The key to this motion for judgment n.o.v. is the second element: namely, whether William's physical injuries deprived Debra of some benefit which formerly existed in the plaintiffs' marital relationship. With respect to this second element of the loss of consortium claim, the Court instructed the jury as follows:

> You, the jury, ... should consider the factors of the relationship of the husband and wife prior to this accident, their respective ages, their previous social and marital conduct together, their conditions of health, *and, of course, the effect of these injuries on their relationship.*

(Charge to Jury at p. 26; D.I. 62A at p. A–37 [emphasis added].)

The defendants assert that there is insufficient evidence in the record from which a reasonable jury could conclude that William's injuries deprived Debra of some previously existing benefit in their marriage. The Court will now undertake to scour the record in search of evidence supporting the second element of Debra's loss of consortium claim.

## IV. ANALYSIS

### A. *Sufficiency Of The Evidence*

A diligent examination of the record reveals just three morsels of evidence that could even remotely support a claim by Debra.

The first evidentiary nugget is the following testimony by Debra concerning medical treatment received by her husband some time after the accident:

> The first thing that [Dr. Arm] did was put [William] on soft blenderized food for a couple of weeks to see how his headaches, the neck pain, [and] the jaw pain ... would re:.:t to non-stressful eating. [William] wasn't too thrilled with blenderized food, so *we had a real difficult time through that period trying to feed him.*

(D.I. 61 at p. 40; D.I. 62A at p. A–20 [emphasis added].)

The second of three kernels of evidence likewise consists of testimony by Debra. She testified that "[i]t is very difficult to see somebody in pain all the time, as [William] was before the accident, and as he is even more so now.... [I]f there is anything I could do to change that, I would." (D.I. 61 at pp. 54–55; D.I. 62A at pp. A–34 to A–35.)

While the foregoing evidence might tend to support a claim by Debra for negligent infliction of emotional distress or mental anguish, it in no way supports the second element of a loss of consortium claim—that William's injuries deprived Debra of some preexisting benefit in their marital relationship.

■ It is important to recognize the distinction between a claim for loss of consortium as opposed to a claim for infliction of emotional distress. Whereas a wife's loss of consortium claim is derivative of her husband's personal injury claim, a claim for mental anguish can be asserted directly by the wife in her own right. *Nutt v. A.C. & S., Inc.,* 466 A.2d 18, 23–24 (Del.Super. 1983), *aff'd sub nom. Mergenthaler v. Asbestos Corp. of America,* 480 A.2d 647 (Del.1984). Loss of consortium and infliction of emotional distress are distinct claims, and each, of course, is comprised of different elements.

Plaintiffs' complaint obscures this distinction somewhat, by interspersing language of emotional distress in the very same count containing the loss of consortium allegations. (*See* D.I. 1 at ¶ 14.) Plaintiffs' apparent confusion is perhaps understandable in light of the language used by the court in *Lacy v. G.D. Searle & Co.,* 484 A.2d 527 (Del.Super.1984). In that case the Superior Court stated that "distress resulting from observing the suffering of the injured spouse" is one "facet of the disruption of the harmonious coexistence which may have existed before the injury." *Id.* at 533. The court continued, noting that "[c]learly, concern over one's spouse is inherent in the marital relationship, and is just as properly a claim in a loss of consortium action as are the more traditional elements." *Id.* While *Lacy v.*

*G.D. Searle* thus tends to blur the distinction between claims for loss of consortium and claims for negligent infliction of emotional distress, the decision does correctly recite the three elements of a claim for loss of consortium. *Id.* at 532. Most importantly for present purposes is its recitation of the second element: "that the spouse [i.e. William] suffered injury which deprived the other spouse [i.e. Debra] of some benefit which formerly existed in the marriage." *Id.*

■ Although negligent infliction of emotional distress or mental anguish is certainly a viable cause of action in Delaware, the jury's award for Debra cannot rest upon such a claim because at least one, and possibly two of the necessary elements are lacking in this case. First, "[i]n any claim for mental anguish, whether it arises from witnessing the ailments of another or from the claimant's own apprehension, *an essential element of the claim is that the claimant have a present physical injury.*" *Mergenthaler v. Asbestos Corp. of America,* 480 A.2d 647, 651 (Del.1984) (emphasis added). *See also McKnight v. Voshell,* 513 A.2d 1319 (Del.1986) ("[t]he law of Delaware is well settled that a claim of negligent infliction of emotional distress or mental anguish may not be maintained in the absence of evidence of a present physical injury"); *Robb v. Pennsylvania R.R.,* 210 A.2d 709, 711, 714–15 (Del.1965); *Bradley v. Equitable Life Assurance Soc'y,* 1987 WESTLAW 17439 (Del.Super. Aug. 28, 1987) (at *7–8). The record in the instant case contains absolutely no evidence of any physical injury suffered by Debra as a result of her alleged emotional distress. For this reason alone, an award to Debra cannot be premised upon defendants' negligent infliction of emotional distress.

Moreover, a claim for emotional distress might not be sustainable here for a second reason. Delaware case law suggests that in order for one to recover for mental anguish triggered by the physical suffering of another, it may be necessary for the claimant [here Debra] to have been in physical proximity to the other person [i.e. William] at the time of the accident. *See Robb*

*v. Pennsylvania R.R.,* 210 A.2d at 711, 714–15; *Nutt v. A.C. & S., Inc.,* 466 A.2d at 24. This is the so-called "zone of danger" test. *Cf. Mancino v. Webb,* 274 A.2d 711, 714 (Del.Super.1971) ("[a]lthough Delaware has recently relaxed the requirements for recovery for emotional distress by allowing recovery for physical consequences of fright caused by the negligence of a defendant *where the plaintiff is within the immediate zone of physical danger* created by such negligence, *such a rule could not be extended to cover the parent-child situation unless the parent was within the zone of danger* to the child" [emphasis added, citation omitted]).[3] In the instant case it is undisputed that Debra was neither in the vehicle with her husband, nor anywhere proximate to the accident scene. Accordingly, to the extent that a "zone of danger" test applies to emotional distress claims, such test was not satisfied by Debra.

Heretofore the Court has examined two fragments of evidence which, it might conceivably be argued, could justify a jury in finding for Debra. There is a third such evidentiary trifle embodied within the following exchange:

Question [by plaintiffs' counsel]: The impression may have been left that there is nothing different [in the marital relationship after the accident as compared with before the accident]. Let me read something from the Complaint which was filed in this case and ask you to comment on it.

This is a Complaint which we filed because you are a plaintiff in this case.

"As a result of Mr. Newman's aforesaid injuries, Mrs. Newman has lost the society, comfort and consortium of her husband. In addition, Mrs. Newman has also suffered severe emotional distress and anguish resulting from observing the suffering of her husband and her concern over her husband's injuries and resulting from the collision."

Was that true when that was filed?

Answer [by Debra]: Yes.

Question: And is that true today?

Answer: Yes.

(D.I. 61 [excerpts from trial transcript] at p. 52; D.I. 62A at p. A–32.)

The above-quoted line of questioning, in which plaintiffs' counsel read portions of the Complaint to Debra (and to the jury), is blatantly leading and is unorthodox in the extreme. *Cf.* Rule 611(c), Fed.R.Evid. ("[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony"). The Court finds that *at most,* Debra's one-word answers to the foregoing leading questions constitute a *mere* "scintilla" of evidence that William's physical injuries divested her of a benefit which previously existed in their marriage. However, as noted previously, "the federal courts do not follow the rule that a scintilla of evidence is enough" to withstand a motion for judgment n.o.v. *Patzig v. O'Neil,* 577 F.2d at 846 (quoting 9 *Wright & Miller* § 2524, at pp. 542–43).

### B. *Evidence That The Marriage Has Not Suffered*

■ The preceding discussion highlights the sheer dearth of evidence to support the second element of Debra's loss of consortium claim, a point on which she bore the burden of persuasion at trial. Indeed the overwhelming effect of the evidence indicates otherwise; that the plaintiffs' marital relationship did *not* suffer as a result of William's injuries.[4]

The record is replete with evidence that the marital relationship did not suffer as a

---

3. The opinion in *Lacy v. G.D. Searle, supra,* states that "[t]he spouse who asserts loss of consortium need not have any physical proximity to the site of the injury." 484 A.2d at 532. While concurring with the foregoing proposition, this Court would nevertheless reemphasize the distinction between loss of consortium and emotional distress. The latter class of claim,

unlike the former, may well contain a "zone of danger" or "physical proximity" element.

4. The Court cannot and does not endeavor to balance the weight of conflicting evidence. That function would naturally be within the jury's province *if* the record contained such conflicting evidence.

result of the accident. A sampling of such testimony is reproduced here:

Question [by defense counsel]: So its fair to say, then, even though your marriage is still strong, it has remained basically the same?

Answer [by Debra]: Yes, that's true.

(D.I. 61 at 49.)

Question [by plaintiffs' counsel]: Did your husband's condition change after this accident?

Answer [by Debra]: Yes.

Question: And did your relationship with him as a result of that change?

Answer: My husband and I have a very strong marriage and we always have. And these things that keep happening just make it even stronger and stronger.

(D.I. 61 at 54.)

Question [by defense counsel]: And, again, just to make sure we are clear, your testimony in your deposition and your testimony here today is that your personal relationship with your husband has not changed because of the automobile accident?

Answer [by Debra]: If anything, it's brought us closer.

(D.I. 61 at 56.) The transcript includes other instances in which Debra acknowledges that her relationship with William has not suffered. (*See* D.I. 61 at 44 [lines 12–20], at 51 [lines 3–7].)

The record likewise abounds with evidence that William's contribution to the household chores has not diminished as a result of the accident.[5] Some choice examples follow:

Question [by defense counsel]: [A]s far as you are concerned, there really was no change as to what [William] could do around the house before this accident and after the accident?

Answer [by Debra]: Basically so.

(D.I. 61 at 48.)

Question [by defense counsel]: [A]s I understand your testimony, there has really been no change in what [William] physically can do around the house since that accident?

Answer [by Debra]: That's true.

Question: I understand your testimony that within [the] six-month period before the collision, he couldn't mow the lawn or shovel the walk, and he still can't do that. Is that fair?

Answer: That's true.

(D.I. 61 at 49.)

Question [by defense counsel]: I think you also said that with regard to household chores, he was able to do the same things after the accident that he was able to do before the accident, no more, no less?

Answer [by Debra]: When he was up to it, that's correct.

Question: And as you said in your deposition, he wasn't doing much in any event; isn't that right?

Answer: That's true.

(D.I. 61 at 51.)

Finally, Debra testified that William's activities—social and otherwise—did not change after the accident.

Question [by defense counsel]: Well, when the [arthritis] got so bad that [William] was put in the hospital, obviously, he was not having much of a social life?

Answer [by Debra]: That's right.

Question: With you or with anyone?

Answer: That's right.

Question: And that is true today, isn't it?

Answer: That's true.

(D.I. 61 at 49.)

Question [by defense counsel]: And with regard to his activities—and I don't mean just his social activities—with regard to his activities, outside activities, in-the-house activities, they were the same be-

---

**5.** It is undisputed that even before the accident, William suffered from a chronic arthritic condition which caused him to resign from his job. The arthritis required William to be hospitalized at certain times. It severely limited his ability to assist with household chores, and to engage in social activities. Additionally, William's preexisting ailments forced him to seek care from a psychologist, and to take pain medication in substantial doses. All of the foregoing predates the accident.

fore the accident as they were after the accident; isn't that right?

Answer [by Debra]: That's true.

(D.I. 61 at 51.)

## V. CONCLUSION

Based upon all of the foregoing, the Court is drawn to one inexorable conclusion. On the evidence of record in this case, no jury could reasonably have found that William's physical injuries resulting from the accident deprived Debra of any benefit which formerly existed in their marriage. Indeed an overwhelming body of evidence dictates a contrary conclusion— i.e. that William's adversities have served only to draw the plaintiffs closer together. Debra proffered no more than a scintilla of evidence to support the second element of her loss of consortium claim. The Court holds, as a matter of law, that the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to Debra on her loss of consortium claim. Accordingly, defendants' motion for judgment notwithstanding the verdict will be granted.