**Ralph E. SMITH, Jr., Plaintiff,**

v.

**DELAWARE BAY LAUNCH SERVICE, INC., Defendant.**

Civ. A. No. 92–336–JLL.

United States District Court, D. Delaware.

Jan. 19, 1994.

Peter E. Hess, Wilmington, DE, for plaintiff Ralph E. Smith, Jr.

Michael B. McCauley and David P. Thompson, of Palmer, Biezup & Henderson, Wilmington, DE, for defendant Delaware Bay Launch Service, Inc.

MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

On June 6, 1992, plaintiff Ralph E. Smith, Jr., (hereinafter "Smith") filed a complaint against defendant Delaware Bay Launch Service, Inc., (hereinafter "Bay Launch") alleging claims for negligence based on the Jones Act,[1] for Unseaworthiness of the vessel, and for Maintenance and Cure.[2] Plaintiff asserts that on three separate dates[3] while working as a deckhand for Bay Launch, he was injured while riding in one of its boats. As a deckhand, Smith was responsible for assisting in the transfer of passengers and supplies to and from the launch to large freighters anchored at Big Stone anchorage in the Delaware Bay. As a result of these three incidents, plaintiff alleged that he was injured and continues to suffer from pain that has prevented him from working to this day. (Docket Item "[D.I.]" 1.)

This case was tried to a jury from October 4 to October 7, 1993, at which time the trial was postponed to reconvene on October 25. On October 26, 1993, the jury returned its verdict sheet, pursuant to Rule 49, Fed. R.Civ.P., which provided answers to special interrogatories with respect to each of the distinct claims asserted by the plaintiff in his complaint. (D.I. 45.) Specifically, the jury returned a verdict in favor of the defendant Bay Launch and against the plaintiff Smith on Smith's claims of negligence based on the Jones Act and on the unseaworthiness of the

vessel. (*Id.*, ¶ 1 and 2.) However, the jury verdict was returned in favor of plaintiff Smith and against the defendant Bay Launch on the maintenance and cure claims. First, the jury found that Smith was entitled to maintenance for the period April 10, 1991 through January 1, 1996, at a rate of $15.00 per day, for a total of $25,905.00. (*Id.*, ¶ 6, 8, 9, and 10.) The jury also awarded $25,000.00 in medical expenses (cure) up until the date of trial. Finally, the jury awarded plaintiff $300,000.00 in compensatory damages because of defendant's unreasonable failure to pay maintenance and provide cure which resulted in an aggravation of the plaintiff's injuries. (*Id.*, ¶ 11 and 12.) Thereafter, the Court pursuant to Federal Rule of Civil Procedure 58 entered a judgment in favor of Smith and against defendant Bay Launch in the total amount of $350,905.00. (D.I. 46.)

The defendant has moved pursuant to Federal Rule of Civil Procedure 50(b) renewing its motion for judgment as a matter of law, or alternatively, for a new trial or remittitur.[4] (D.I. 57.) The Court will address each of these requests *seriatim*.

## II. DISCUSSION

### A. *MAINTENANCE AND CURE*

Maintenance is the ancient obligation of the shipowner to provide food and lodging to a seaman who becomes ill or injured in the service of the ship. Cure is the obligation of the owner to pay for medical expenses. Both maintenance and cure are to be paid until the seaman reaches maximum recovery or maximum cure. *Williams v. Kingston Shipping Co., Inc.*, 925 F.2d 721, 723 (4th Cir.1991). When "it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering, but not otherwise improve the sea-

---

1. 46 U.S.C. § 688 (1982).

2. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) predicated on 46 U.S.C. § 688 and pursuant to 28 U.S.C. § 1333 (admiralty and maritime matters).

3. Plaintiff remembers these incidents to have occurred on or about: December 23, 1989; December 13, 1990; and January 11, 1991.

4. The parties completed post-trial briefing on December 23, 1993.

man's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Pelotto v. L & N Towing*, 604 F.2d 396, 400 (5th Cir.1979); *see also Kratzer v. Capital Marine Supply, Inc.*, 490 F.Supp. 222, 229 (M.D.La.1980), *aff'd*, 645 F.2d 477 (5th Cir.1981) ("[m]aximum cure is achieved when it appears that further treatment will result in no betterment of the seaman's condition"); *Blainey v. American S.S. Co.*, 990 F.2d 885, 887 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 311 (1993) (maximum cure is reached "when the seaman's affliction is cured or declared to be permanent").

## B. *DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW*[5]

Recently, this Court had another opportunity to address the appropriate standard which governs judgment as matter of law. In *Garrison v. Mollers North America*,[6] this court held that "[a] post-verdict motion for judgment as a matter of law pursuant to Rule 50(b) should be granted only when there is no legally sufficient basis for a reasonable jury to have found for the non-moving party." *Garrison v. Mollers North America, Inc.*, 820 F.Supp. 814, 818 (D.Del. 1993). This Court further stated that "[t]he reviewing court must give the non-moving party, 'as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him.'" *Id.* at 818–19 (citation omitted). Finally, "[t]he reviewing court should not grant judgment as a matter of law merely because its view of the evidence differs with that manifest in the jury's verdict. Such action on the part of the reviewing

court would constitute a usurpation of the jury's province as factfinder." *Id.* at 819.

Even more recently, in *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691–92 (3d Cir.1993), the Third Circuit set forth the following standard for determining when judgment as a matter of law should be granted:

> [T]he trial court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the "minimum quantum of evidence from which a jury might reasonably afford relief." *Keith v. Truck Stops Corp.*, 909 F.2d 743, 745 (3d Cir.1990) (citations omitted). The Court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury. *Blair v. Manhattan Life Ins. Co.*, 692 F.2d 296, 300 (3d Cir.1982). The Court may, however, enter judgment [as a matter of law] . . . if upon review of the record, it can be said as a matter of law that the verdict is not supported by legally sufficient evidence. *Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

▪ The Third Circuit has held that a scintilla of evidence presented by the plaintiff is not sufficient to deny a motion for judgment as a matter of law. The Court must determine not whether there is literally no evidence supporting the non-moving party, but whether there is evidence upon which the jury could properly find for the non-moving party. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993). The Court should grant the motion for a judgment as a matter of law only if, "viewing all the evidence which has been tendered and should have been admitted in the light most favor-

---

**5.** [P]rior to the 1991 amendments to the Federal Rules of Civil Procedure, a motion under Rule 50(b) was called a motion for judgment notwithstanding the verdict while a motion under Rule 50(a) was called a motion for a directed verdict. The amendments adopted the common terminology of "judgment as a matter of law" for both subsections (a) and (b) of Rule 50.... In noting the "common identity" of motions made under subsections (a) and (b) of

Rule 50, the Advisory Committee implicitly approved the longstanding authorities that held that the standards for the granting of judgment n.o.v. were identical to those for direction of a verdict.
5A James Wm. Moore, *et al., Moore's Federal Practice* ¶ 50.07[2] at p. 50–74 to 50–75 (1993).

**6.** Footnote 3 of *Garrison* contains a summary of the 1991 amendments to Rules 50(a) and 50(b) of the Federal Rules of Civil Procedure.

able to the party opposing the motion, no jury could decide in that party's favor." *Id.* at 1238 (citing *Indian Coffee Corp. v. Proctor & Gamble Co.,* 752 F.2d 891, 894 (3d Cir.), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985)). Stated differently, "[j]udgment as a matter of law after the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A Moore, *et al., supra,* ¶ 50.07[2] at p. 50–76.

Defendant contends that the verdict must be set aside because there is insufficient evidence in the record from which a reasonable jury could conclude that Smith's injuries were aggravated by defendant's unreasonable failure to provide maintenance and cure and there is insufficient evidence to prove that Smith was injured while in the service of the ship.

## 1. The Award For Aggravation Of Injuries Due To Unreasonable Failure To Provide Maintenance And Cure Until Maximum Cure Was Reached.

■ Defendant objects to the amount of compensatory damages awarded for non-payment of maintenance and cure. Specifically, the jury found that "the defendant unreasonably failed to pay maintenance or provide cure to the plaintiff ... and that failure has resulted in an aggravation of the plaintiff's injury." (D.I. 45, ¶ 11.) To compensate the plaintiff:

[a] full panoply of tort remedies are available to a seaman for his employer's unreasonable failure to pay ... maintenance and cure. When an employer unreasonably fails to provide maintenance and cure, and such failure aggravates the seaman's condition, the employer is liable for the increased medical expenses, increased maintenance, and any other tort damages which result.

*Hodges v. Keystone Shipping Co.,* 578 F.Supp. 620, 623 (S.D.Tex.1983) (citations omitted); *see also Gaspard v. Taylor Diving & Salvage Co., Inc.,* 649 F.2d 372, 375 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

■ Stated differently, if:

the shipowner unreasonably rejects the claim, when in fact the seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages. These are the damages that have resulted from the failure to pay, such as aggravation of the seaman's condition, *determined by the usual principles applied in tort cases to measure compensatory damages.*

*Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987) (emphasis supplied). Further, it should be noted that "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman." *Vaughan v. Atkinson,* 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962).

■ A brief examination of tort law indicates that "[a]n essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Page Keeton *et al., Prosser and Keeton on the Law of Torts,* § 41 at 263 (5th ed. 1984). Implicit in this statement is the notion that damages or injuries must exist. It is a well-established rule that "[t]he seaman cannot recover damages for failure to pay maintenance and cure unless he presents proof that he sustained injury by reason of the failure to pay it." 2 M. Norris, *The Law of Seamen,* § 26:41 at 108 (4th ed. 1985); *see also Neville v. American Barge Line Company,* 276 F.2d 117, 120 (3d Cir.1960) (the plaintiff must prove that the wrong charged was a cause of the harm). In other words, not only does the plaintiff bear the burden of proof that he has sustained an injury in addition to the one caused in the alleged boating mishaps or that an injury which resulted from the boating accidents was prolonged or aggravated, but plaintiff must also prove that the failure to pay maintenance and cure was a cause of this additional injury or that the failure to pay maintenance and cure prolonged or aggravated the injury. In

these circumstances, the question of causation is whether the failure to receive maintenance and cure payments was a cause of plaintiff's failure to obtain some type of medical treatment. Unless the plaintiff can point to some treatment that he would have pursued but for his lack of funds, he may not recover for aggravation of any injury that occurred.

█ Giving the jury and the plaintiff the benefit of the doubt as this Court must do, an exhaustive examination of the record reveals just three tidbits of information that might possibly be argued to support a claim of aggravation by Smith. The first morsel comes from the testimony of Dr. Pierre Leroy, one of Smith's doctors, who testified on direct that when he examined Smith on February 17, 1992 (14 months after the last accident), Smith was not on medication because "he could not afford the cost of the medication." (D.I. 49 at 162.) However, a few lines following, Dr. LeRoy indicated that the aspirin that the plaintiff had substituted in place of the Naprosyn "is an anti-inflammatory agent also and very effective in many cases." (D.I. 49 at 162.) Assuming *arguendo* that the jury inferred from this testimony that Smith would have been able to pay for this medication if the defendant was paying the maintenance and cure that plaintiff claims is owed him, nevertheless, neither Dr. LeRoy, nor any other of the plaintiff's doctors, subsequently testified that Smith's condition was worse off because of the lack of this medication. The second piece of information is Smith's testimony to the effect that he would have continued his treatment at the Dickenson Medical Group if the bills had been paid.[7] Yet, there is no evidence to suggest that the plaintiff's condition was aggravated as a result of discontinuing treatment there. The third bit of information comes from the testimony concerning an operation that is possible for the plaintiff to have, but which he has not undergone. It is impossible for the jury to have assumed that

Smith would have undergone the surgery if he had the money from maintenance and cure payments, because the direct testimony of Dr. LeRoy indicated that, "Mr. Smith does not want surgery in view of the risks." (D.I. 49 at 199.)

Thus, there was a total failure of proof on an essential element of the tort—that injury or damage occur. As a matter of logic, it is impossible to prove a causal relationship between two events if only one event has occurred. As a matter of law, there can be no causal relationship between the employer's failure to pay and an injury that occurred, if in fact the plaintiff has failed to prove that any injury or damage exists. The Court makes clear that it is not weighing the evidence with regard to aggravation of an injury. Rather, the Court is simply pointing out that there was no evidence whatsoever from which the jury could reasonably infer that defendant's failure to pay maintenance and cure contributed to an aggravation or prolongation of the plaintiff's injuries.

█ Additionally, the defendant's argument is buttressed by the Supreme Court case of *Cortes v. Baltimore Insular Line.*[8] Justice Cardozo, in *dicta,* stated that:

[t]he failure to provide maintenance or cure may be a personal injury or something else *according to the consequences.* If the seaman has been able to procure his maintenance and cure out of his own or his friends' money, *his remedy is for the outlay, but personal injury there is none.*

*Cortes,* 287 U.S. at 372, 53 S.Ct. at 175 (emphasis supplied). Thus, as a matter of law, there can be no injury or aggravation from failure to pay maintenance and cure if the plaintiff was able to receive adequate food, lodging, and medical treatment. Stated differently, in a situation where the seaman procures his own maintenance and cure, there cannot be a claim for aggravation due to unreasonable failure to pay maintenance and cure, because the failure to pay mainte-

---

7. The testimony in relevant part is as follows:

 A: I was going to Dickenson Medical Group and would have used them had the bill been paid, but I wasn't able to pay my bill at Dickenson Medical Group. And I was quite ashamed of that. And I would have continued my work there.
 (D.I. 49 at 36.)

8. 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

nance and cure did not affect the seaman's ability to receive food, lodging, and medical treatment. This proposition of law is not a radical idea. Instead, it is merely reiterating the general tort concept that there must be causation before damages can be awarded.

Plaintiff provided ample evidence to suggest that he was receiving adequate medical care. On direct examination, plaintiff's own attorney elicited from him that he had been to see his doctor, Dr. Eleanor Stump, the chiropractor, on 224 different dates between the December, 1989 accident and October, 1993. (D.I. 51 at 125–26.) Additionally, he visited Dr. LeRoy, the neurologist, between 20 and 25 times over the past two years. (D.I. 51 at 135–36.) He was also examined at least once by Dr. Bruce Heppenstall, Dr. Sutton, Dr. Harris, and Dr. McKnight. Instead of proving that Smith was unable to receive adequate medical care due to lack of funds, the evidence presented by the plaintiff suggests just the opposite. It is difficult to fathom how any reasonable jury could conclude that failure to pay maintenance and cure prolonged or aggravated an injury in light of the extensive treatment that Smith received even without the maintenance and cure payments. In the case at bar, since there was no evidence presented by the plaintiff to suggest that he would have pursued a different course of treatment but for the lack of funds, it can be said with certainty that no reasonable jury could find that

aggravation occurred. Thus, plaintiff has failed to satisfy the injury or damage requirement under tort law which must be met before damages can be awarded. Since there was a total failure of proof on this essential element of the tort, the Court finds that no reasonable jury could conclude that plaintiff's injuries were aggravated by the failure of the defendant to provide maintenance and cure.

Accordingly, the defendant's motion for judgment as a matter of law as to the award for aggravation due to unreasonable failure to pay maintenance and cure must be granted and the award of $300,000.00 for that claim must be set aside.[9]

### 2. The Maintenance And Cure Awards.

■■■■ Defendant also moves for judgment as a matter of law with respect to the jury awards of $25,905.00 for maintenance and $25,000.00 for cure, contending that there was insufficient evidence for the jury to conclude that Smith was injured on defendant's boats. Applying the standard for judgment as a matter of law set out above militates against granting judgment as a matter of law on these two claims. As this Court stated in *Garrison:*

> Given the conflicting evidence and divergent expert testimony that was before the jury, it would be improper to grant judgment as a matter of law for the defendants.

9. Defendant has moved in the alternative for a new trial on the issue of compensatory damages for aggravation of injuries caused by unreasonable failure to pay maintenance and cure. Even where the court grants judgment as a matter of law, Fed.R.Civ.P. 50(c)(1) requires the court to "rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for a new trial." Fed.R.Civ.P. 50(c)(1); *see also Roebuck v. Drexel University,* 852 F.2d 715, 735 (3d Cir.1988).

In reaching a verdict on the issue of compensatory damages for aggravation of injuries caused by unreasonable failure to pay maintenance and cure, the jury necessarily determined that Smith's injuries were somehow exacerbated because he was unable to receive treatment due to defendant's withholding of funds. Defendant contends that not only is the jury verdict against the weight of the evidence, but there is no evidence which suggests or proves such a result.

Defendant argues that there is no way that a jury could infer aggravation or prolonging of an injury, because there was a total lack of evidence on this claim. While the Court is mindful that a jury verdict should not be improvidently cast aside, the Court must agree that the verdict reached here was against the weight of the evidence. In this case where the plaintiff presented no evidence of aggravation and the plaintiff bears the burden on that issue, the Court must conclude that the verdict was not well reasoned and a new trial on liability and damages must be granted. Given the fact that not only was there was no conflicting evidence on this issue, but there was no evidence at all on this issue, it is clear that the jury reached a seriously erroneous result.

The Court makes clear that the grant of a new trial on the issue of aggravation due to unreasonable failure to pay maintenance and cure is plainly conditioned upon the reversal of the judgment as a matter of law on this issue.

If this Court were the trier of fact, the result in the present case might well have been different. But, it is not the duty of this Court in entertaining a motion for judgment as a matter of law to supplant its view of the evidence for that of the jury. The jury's verdict must stand if viewing the evidence in the light most favorable to the nonmovant, a reasonable jury could have entered a verdict in favor of the nonmovant.

*Garrison,* 820 F.Supp. at 820 (citation omitted). The Court finds ample evidence in the record which, if given credence by the jury, could lead a reasonable jury to determine that plaintiff sustained an injury while on the ship and that some amount of maintenance and cure was due. Since the evidence was sufficient to uphold the jury's verdict on the maintenance and cure claims, the Court hereby denies defendant's motion for judgment as a matter of law on these two claims.

## C. DEFENDANT'S MOTION FOR NEW TRIAL OR REMITTITUR

 Federal Rule of Civil Procedure 50(b) [10] allows a party who moves for judgment as a matter of law to move in the alternative for a new trial. Thus, if a court denies a motion for judgment as a matter of law, the party still has an opportunity to prevail on a motion for a new trial. The standard for granting a new trial is governed by Rule 59(a) of the Federal Rules of Civil Procedure. Rule 59(a)(1) provides in relevant part:

[a] new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a)(1). This Court has previously noted two recognized grounds for granting a new trial—that the verdict is against the weight of the evidence and that the jury's damage award is excessive. *Garrison,* 820 F.Supp. at 820; *Schreffler v.*

*Board of Ed. of Delmar Sch. Dist.,* 506 F.Supp. 1300, 1305–06 (D.Del.1981). The decision whether or not to grant a new trial is placed almost entirely in the hands of the district court and will be disturbed only if the district court abuses its discretion. *Roebuck,* 852 F.2d at 735. The Third Circuit has explained that such deference is especially justified where the trial court is considering whether the verdict is against the weight of the evidence because the district court was able to observe the witnesses and follow the trial in a way that the Court of Appeals cannot duplicate simply by reviewing the record. *Id.* at 735.

However, the Court observes that:

where the ground on which a new trial is sought is that the jury's verdict was against the great weight of the evidence, the judge should proceed cautiously, since whenever a new trial is granted on this ground, the judge has necessarily substituted his ... judgment ... for that of the jury.

*Cudone v. Gehret,* 828 F.Supp. 267, 269 (D.Del.1993). It is also well established that a Court has the authority to order a new trial even in a situation where the Court was constrained to deny a motion for a judgment as a matter of law. *Roebuck,* 852 F.2d at 735–36. Still, "a new trial should only be granted where a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.'" *Cudone,* 828 F.Supp. at 269 (citation omitted). Finally, a district court has less discretion to set aside a jury verdict and order a new trial when "the subject matter of the litigation is simple and within a layman's understanding" as opposed to a case dealing "with complex factual determinations such as passing 'upon the nature of an alleged newly discovered organic compound in an infringement action.'" *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991) (citation omitted).

Defendant has moved for a new trial on the maintenance and cure awards on the

---

**10.** Fed.R.Civ.P. 50(b) provides in relevant part: "[a] motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative." Fed.R.Civ.P. 50(b).

ground that the jury's verdict is against the weight of the evidence and that the jury's damage awards are excessive. Additionally, in the event that the Court denies a new trial on the claims for maintenance and cure, the defendant seeks in the alternative an order for remittitur as to these verdicts.

## 1. The Jury's Verdict Is Against The Weight Of The Evidence.

### a. The Maintenance And Cure Awards.

■ In reaching a verdict on the claims for maintenance and cure, the jury necessarily decided: (1) that Smith was injured in the service of the ship; (2) that he had incurred medical expenses up until the time of trial; (3) that at the time of trial, he had not yet reached maximum cure; and (4) that he would reach maximum cure on January 1, 1996. The jury was able to observe and evaluate the testimony of Smith, Frank Van Orman, and Robert Zooke, as to the circumstances surrounding the incidents during which Smith sustained his injuries. Although conflicting evidence was presented with regard to pre-existing injuries and as to whether the alleged incidents even occurred, this Court holds as a matter of law that the determination by the jury that Smith sustained an injury in the service of the ship was not against the weight of the evidence. The jury simply chose to believe the testimony of the plaintiff and the plaintiff's witnesses as opposed to the surmise and speculation offered by the defendant that the injuries never occurred while Smith was in the service of the ship.

■ Defendant next argues that even assuming that plaintiff was injured in the service of the ship and is entitled to cure (medical payments) up until the trial, the jury verdict of $25,000.00 was against the weight of the evidence because the plaintiff only offered evidence of $13,523.00[11] in medical expenses. Thus, there is no logical way that the jury could arrive at a figure of more than $13,523.00 if they were only considering the evidence presented. Plaintiff in its answering brief suggests that the jury was consider-

ing the doctor bills from Doctors Wagner, Harris, and Sutton as well as transportation costs to and from the doctors' offices. (D.I. 61 at 12–13.) The Court need not address whether such costs incurred are recompensable, because even if they were, plaintiff has failed to offer evidence of these costs. Since there was no evidence presented as to what these costs amounted to, it is clear that the amount awarded for cure (medical expenses) is against the weight of the evidence and a new trial on the claim for cure must be granted.

The defendant's argument that the maintenance award is against the weight of the evidence is twofold. First, defendant argues that the date which the jury determined to be the date of maximum cure was against the weight of the evidence. Second, and alternatively, defendant contends that even if maximum cure had not been achieved, the jury award was against the weight of the evidence because it awarded future maintenance when none of the plaintiff's or any other medical experts testified with any specificity as to when maximum cure would be achieved.

The Court charged the jury with regard to maintenance and cure and maximum cure in pertinent part: "The obligation [of the employer to pay maintenance and cure] usually ends when qualified medical opinion is to the effect that maximum possible cure has been effected.... However, when that period begins and ends are matters for you to determine from all of the evidence in the case." (D.I. 48 at 23.) Thus, on the verdict sheet, when the jury found that maintenance was owed the plaintiff from April 10, 1991 until January 1, 1996, they necessarily determined that the plaintiff had not yet reached maximum cure, but would reach that point on January 1, 1996. (D.I. 45, ¶ 8.) The Court has again combed the record in an effort to find any testimony by the doctors which stated or from which the jury could infer that the plaintiff would reach maximum cure on January 1, 1996. There is simply no evidence whatsoever to support this jury finding

---

11. The medical expenses consist of the following: $9,301.00 for treatment by Dr. Stump; $3,320.00 for treatment by Dr. LeRoy; and $902.37 for prescription medications. While the total is actually $13,523.37, the total becomes $13,523.00 when rounded to the nearest dollar.

and a new trial must be ordered on the issue of maintenance and cure.

In fact, the only evidence at trial on the issue of maximum cure tended to support a conclusion that maximum cure was reached at or before trial. Maximum cure, as explained above, is that point in time when the seaman's condition is incurable or when future treatment will only relieve pain, but will not lead to a betterment of the seaman's condition. *Pelotto*, 604 F.2d at 400. Defendant's medical expert, Dr. Heppenstall, testified that the average person would reach maximum cure approximately eight to ten weeks after sustaining an injury similar to that sustained by Smith.[12] Plaintiff's medical experts testified that Smith's condition was either stable or deteriorating.[13] Dr. Stump's testimony that Smith is staying the same or getting worse suggests that none of her treatment has led to the betterment of Smith's condition. Dr. LeRoy's testimony indicates that he was attempting to alleviate

12. The testimony of Dr. Heppenstall with regard to maximum cure is as follows:

Q: Doctor, Mr. Smith claims that he continues to have neck and right arm pain, do you have an opinion based upon a reasonable—a reasonable degree of medical certainty as to whether this pain, if it exists, is the result of any traumatic injuries Mr. Smith may have sustained prior to your November 27, 1991, examination?
A: No, I do not feel it was related to the episode he described to me. I feel that he may have those symptoms, and that they're most likely, to a reasonable degree of medical certainty, due to degenerative arthritis of the cervical spine.
Q: Okay. Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether Mr. Smith has recovered from the strain which you diagnosed in your—
A: Yes, and I felt within a reasonable degree of medical certainty that he did.
Q: That he did recover from the strain.
A: Yes. He did not get rid of the arthritis, he still has arthritis.
Q: And, Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether Mr. Smith needs any further active or passive treatment for the injuries that he told you of during the history which you took on November 27, 1991.
A: No, I do not feel that he requires any further treatment for that injury that he described to me. (D.I. 63 at 33–34.)

\* \* \* \* \* \*

"This type of problem usually resolves itself within an eight to ten week time frame of conservative therapy." PX–32 at 2.

Plaintiff argued at trial that the medical opinion was not accurate because it was not based on knowledge that three incidents had occurred. This is not relevant to the Court's conclusion, because obviously the jury could take that into consideration. The Court simply points out that the defense introduced evidence that maximum cure would be achieved in eight to ten weeks.

13. The testimony of Dr. Stump with regard to maximum cure is as follows:

Q: Does his condition appear to be getting better or worse?
A: Well, overall, I agree with Dr. Heckenstell [sic]. After his first injury, he should have gotten better after eight to ten weeks of treatment. But, number one, he didn't.... Now, what has happened is that he is constantly staying the same, if not getting worse.... And his pain has progressively gotten worse. (D.I. 49 at 90.)

The testimony of Dr. LeRoy with regard to maximum cure is as follows:

They were medicines that were used to help reduce the inflammatory responses that he has, which is chronic.... (D.I. 49 at 180.)
But as we moved along through 1992, the symptoms became—moved from the moderate to more severe intensity, and under those circumstances I had supplemented his treatment program with physical therapy and regional nerve blocks. (D.I. 49 at 181.)
So we were looking for some alternative medicine to afford a humanitarian way of managing his pain complaints while he's deciding whether to have surgery or not. (D.I. 49 at 182.)
Q: Okay. You've examined Mr. Smith for more than a year and a half. Would you say that in this period of time his condition is improving, staying the same or deteriorating?
A: I believe he has still not stabilized his condition and is deteriorating somewhat in that his pain has become more intense. We are now moving from when I first saw him from non-narcotic medication, relatively mild analgesics, now to those that are much more serious in nature and also using the duragesic patch for really pain management. (D.I. 49 at 185.)
I have a letter that—from Dr. Stump dated February the 12th, 1992 that said, Dear Dr. LeRoy, Mr. Ralph Smith has been seen for whiplash condition which happened while he was on a boat. And goes on, The prognosis is undetermined. And she goes on, Mr. Smith's level of recovery has plateaued to where he is seen for corrective treatment but at times still complains he has slight problems in his neck after treatment. (D.I. 49 at 198.)
Q: You know that he had had these problems for ten years and he hasn't decided yet what to do about a myelogram or surgery, has he?
A: The nature of the problems over these past ten years has changed. He's in a dynamic state now. He is getting worse. In other words, he has progressed in his symptoms. (D.I. 49 at 201.)

Smith's pain, but that his condition was not improving. Rather than proving that maximum cure had not been achieved, plaintiff presented convincing evidence that maximum cure had been achieved at the time that its medical experts testified at trial.

No doubt the legal definition of cure differs from the laymen's definition of being cured. "Cure" in the context of maintenance and cure means "care." *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). In *Farrell v. U.S.*, the seaman was suffering from post-traumatic convulsions which would probably become more frequent and were without the possibility of further cure. *Farrell v. U.S.*, 336 U.S. 511, 513, 69 S.Ct. 707, 708, 93 L.Ed. 850 (1949). Despite the fact that his condition was not getting better, was stabilized, or even getting worse, it was still held that the seaman was not entitled to future maintenance and cure because maximum cure had been achieved. *Id.* at 513, 69 S.Ct. at 708. In the case at bar, even discounting the testimony of the defendant's experts, the evidence overwhelmingly suggests that maximum cure had been achieved at the time of trial. Thus, awarding maintenance until January 1, 1996, was clearly against the weight of the evidence and a new trial on this claim is justified.

## 2. The Jury's Verdicts Are Excessive.

■ In order to decide whether a jury's verdict is excessive, the Court must determine whether the damage award, "shock[s] the judicial conscience." *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir.1987). As the Third Circuit stated more fully, "[a] jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket. There must be a rational relationship between the specific injury sustained and the amount awarded." *Gumbs*, 823 F.2d at 773. In the event that the trial court determines that the jury award is excessive, it has the option of granting a new trial or "it may grant the plaintiff an election to remit a stated portion of the amount or submit to a new trial." 6A Moore, *et al.*, *supra*, ¶ 59.-08[7] at p. 59–187. However, "[i]f the trial court grants the plaintiff an election to remit a stated portion of the damage award, the remittitur must not cause the damage award to 'fall below the maximum amount which the jury could reasonably find.'" *Garrison*, 820 F.Supp. at 822 (citation omitted).

### a. The Maintenance Award.

■ The Court finds that the maintenance award of $25,905.00 is not rationally related to the evidence produced at trial, because there is no evidence to support a jury finding that maximum cure would be achieved on January 1, 1996. The Court is now left to determine the maximum amount which the jury could reasonably find. Normally, awards to cover future maintenance are not permitted unless the future time period is definitely ascertained or ascertainable. *Calmar*, 303 U.S. at 529, 58 S.Ct. at 654. The Supreme Court held that an "award of a lump sum in anticipation of the continuing need of maintenance and cure for ... an indefinite period is without support in judicial decision." *Id.* at 529, 58 S.Ct. at 654. Assuming *arguendo* that plaintiff has not reached maximum cure already, the plaintiff's medical experts have failed to identify with any specificity as to when maximum cure would be achieved. Thus, the $25,905.00 awarded by the jury for maintenance cannot be permitted to stand. The Court must fashion the maintenance award to eliminate that portion of it which represents future maintenance payments. If the award is to be properly reduced, the maintenance payments would only be for the period from April 10, 1991, until the date of trial (October 4, 1993). At a rate of $15.00 per day, the maintenance award for this 909 day period would be $13,635.00. The plaintiff thus will be given the option of remitting $12,270.00 of the $25,905.00 jury award for maintenance, or, in the alternative, of submitting to a new trial on this claim for maintenance.

782

### b. The Award For Cure.

█ Since the evidence produced at trial only proved medical expenses of $13,523.00,[14] any award in excess is not rationally related to the evidence produced at trial. The $25,000.00 award for medical expenses cannot be permitted to stand. Indeed, this award is almost twice as much as the medical costs proven at trial and is thus shocking to the judicial conscience. The plaintiff thus will be granted the option of remitting $11,477.00 of the $25,000.00 jury award for cure, or, in the alternative, of submitting to a new trial on the claim for cure.

## III. CONCLUSION

An order will be entered granting defendant's motion for judgment as a matter of law on plaintiff's claim for compensatory damages for unreasonable failure to pay maintenance and cure. Alternatively, the Court will grant a new trial on plaintiff's claim for compensatory damages for unreasonable failure to pay maintenance and cure only on condition that the Court of Appeals reverses or vacates this Court's grant of judgment as a matter of law on that issue.

This order will also deny defendant's motion for judgment as a matter of law on plaintiff's claims for maintenance and cure. However, this order will grant a new trial on both liability and damages on plaintiff's claims for maintenance and/or cure unless the plaintiff on or before *February 11, 1994,* files with the Clerk of this Court and serves upon opposing counsel a written consent to reduce the judgment on the claim for maintenance to $13,635.00 and/or to reduce the judgment on the claim for cure to $13,523.00.

---

14. *See* footnote 11, *supra.*