Kirk **STEWART** and Margie
Stewart, Plaintiffs,

v.

**WALBRIDGE, ALDINGER COMPANY,**
a corporation of the State of
Michigan, Defendant.

**Civ. A. No. 93–266–JLL.**

United States District Court,
D. Delaware.

March 27, 1995.

Rachel B. Mersky, Walsh & Monzack, Wilmington, DE, for plaintiffs.

David M. Lukoff, Elzufon, Austin & Drexler, P.A., Wilmington, DE, for defendant.

## OPINION

LATCHUM, Senior District Judge.

### I.  Introduction and Procedural History

Plaintiffs, Kirk and Margie Stewart, filed a complaint on July 7, 1993, (Docket Item ["D.I."] 1), and an amended complaint, (D.I. 4), on July 13, 1993 alleging that the defendant, Walbridge, Aldinger Company ("Walbridge") injured Mr. Stewart on Monday, June 10, 1991 by negligently stacking construction materials which, as a result, fell on him.  They further allege that Mr. Stewart's injury caused injury to Mrs. Stewart through loss of consortium.

Mr. Stewart was and is employed by Chrysler Corporation at its assembly plant in Newark, Delaware.  On the morning of June 10, 1991, Mr. Stewart, along with two other employees, Ms. Rebecca Coleman and Mr. Alonzo Jones, took a scheduled break just outside of the plant building and sat at one of two picnic tables provided by Chrysler in the immediate area.  Next to the picnic tables lay some long metal rods on the ground. Stacked on top of these rods and leaning against the building wall was what has been described as two large shelves or screen-like rectangular objects.  Mr. Stewart sat facing the wall while both Ms. Coleman and Mr. Jones sat facing Mr. Stewart with their backs to the wall.  Ms. Coleman sat on the picnic table to Mr. Stewart's left side, and Mr. Jones sat diagonally across from Mr. Stewart at the same picnic table.  Shortly after sitting down, Mr. Stewart noticed that one of the two shelf-like objects had begun to fall toward Mr. Stewart and Mr. Jones.  Mr. Stewart, in a unthinking moment of pure reflex jumped up and reached out with his

hand to stop the object from falling on Mr. Jones and himself. When the object hit Mr. Stewart's hand he was injured due to the weight of the object coupled with the force of its impact. Mr. Stewart now claims that the defendant negligently stacked the shelf-like objects on top of the metal rods and is thus responsible for his injury.

After extensions requested by the parties, (D.I. 20 & 23), a trial was held on November 8 & 9, 1994. At the conclusion of the plaintiffs' case defense counsel made a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). This Court reserved decision on the motion and allowed the trial to proceed. At the close of all the evidence defense counsel again moved for judgment as a matter of law and this Court again reserved decision and sent the case to the jury. The trial resulted in a hung jury and thus a mistrial was declared. The defendant subsequently filed a written motion for judgment as a matter of law, (D.I. 48), and the plaintiffs answered. (D.I. 49.) Ripe for decision now is defendant's motion for judgment as a matter of law.[1]

## II. Standard of Review

■ Here counsel properly moved for judgment as a matter of law at the close of all the evidence and filed his renewed motion in a timely matter pursuant to Rule 50 of the Federal Rules of Civil Procedure. The fact that the jury was unable to reach a unanimous verdict does not in any way affect this Court's duty to rule on the motion. Fed. R.Civ.P. 50(b).[2] In deciding whether to grant a motion for judgment as a matter of law:

> the trial court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the "minimum quantum of evidence from which a jury might reasonably afford relief." ... The court may not weigh evidence, determine the credibility of witnesses or substitute its version of the

facts for that of the jury.... The court may, however, [grant the motion] if upon review of the record, it can be said as a matter of law that the verdict is not supported by legally sufficient evidence.

*Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 691–92 (3d. Cir.1993). A mere scintilla of evidence presented by the plaintiff is not sufficient to deny a motion for judgment as a matter of law. The Court must determine not whether there is literally no evidence supporting the non-moving party, but whether there is evidence upon which the jury could properly find for the non-moving party. *Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3d Cir.1993). The Court should grant the motion for judgment as a matter of law only if, "viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." *Id.* (citation omitted). With these guiding principles of law in mind this Court will discuss the merits of the defendant's motion.

## III. Discussion

■ The plaintiffs, in this negligence action, as in any negligence action, must establish that there was a duty owed to them by the defendant, that the duty was breached, that the plaintiff was damaged, and that the damage was proximately caused by the breach. This Court will review the testimony of each witness (excluding medical testimony because of this Court's determination as to liability), *seriatim,* taking all inferences in the light most favorable to the plaintiffs, in analyzing the defendant's motion for judgment as a matter of law.

## A. Plaintiff Kirk Stewart's Testimony

■ The bulk of Kirk Stewart's testimony concerned how his injury came about. There is no dispute as to the fact that he was injured, and that this injury was caused by a

---

1. A motion for a new trial was not made.

2. Indeed, the time at which the court decides a Rule 50 motion for judgment as a matter of law, whether under Rule 50(a) before the case is sent to the jury, or under Rule 50(b) after the jury has

returned a verdict (or failed to do so) makes no difference in the standard used to review the evidence. *See Smith v. Delaware Bay Launch Service, Inc.,* 842 F.Supp. 770, 774 n. 5 (D.Del. 1994).

falling object stacked against the wall near where he took a break. Thus it is clear that the element of damage was proved at trial. What is in dispute, however, is who placed the object against the wall. Even viewing Kirk Stewart's testimony in the most favorable light he simply does not provide any evidence that the defendant was responsible. To establish his case Mr. Stewart testified that there was a dumpster located next to the picnic tables, that this dumpster did not belong to Chrysler, and that there was debris spread across a large area that included the Walbridge construction site. (D.I. 52, Vol. A. at 9–19). However, at trial Mr. Stewart testified that he told a nurse at the time of his accident that the shelf-like object that fell on him was a storage rack. (Id. at 37.) Mr. Stewart also testified at a deposition taken on May 3, 1994 nearly three years after the accident and approximately six months before the trial:

Q: "You know what it was used for. What it was meant to be used for?"

A: "To store material on top."

Q: "When it is lying down you store material on top?"

A: "Yes. The shelf fits on top of a steel frame and then they store material on top of it."

Q: "It itself is a shelf, in other words?"

A: "Yes."

Q: "Do you know where it was meant to be located other than against the wall in the break area?"

A: "They are located all through the plant, mostly in the shipping/receiving area, which they store the material in."

(Id. at 41–43.)

Mr. Stewart testified at trial that he now believes the object was not a Chrysler storage shelf and that he came to this belief by comparing what he remembers of the shelf at the time of the accident to the shelves that Chrysler uses today. (Id. at 43.) At trial it was established that the dumpster did not have any indicia of ownership painted on or otherwise connected with it. (Id. at 43–44.) Mr. Stewart testified that he could see a white trailer approximately two hundred feet from where he was sitting with its name on a placard in the window in big letters that he identified as "Walbridge, Aldinger." (Id. at 49–54.) Mr. Stewart testified in his deposition of May 3 that there were other trailers located on the plant premises, (id. at 59), however, at trial Mr. Stewart explained that he now recalled that there were no other trailers visible at the time. (Id.)

Taken in the light most favorable to the plaintiff, Kirk Stewart was only able to establish that the defendant had a trailer located a considerable distance from the picnic tables, a fact which is not denied by the defendant, and that there was a dumpster that did not belong to Chrysler in close proximity to the picnic tables. Such evidence does nothing however to further the plaintiffs' claim that the defendant had control over, and thus responsibility for, the area near the picnic tables where Kirk Stewart was sitting when he was injured. There is, in addition, evidence tending to show that there were other contractors on the site who could have been responsible for the dumpster, and that the object that fell on Mr. Stewart was from the Chrysler plant itself and not related to the defendant's construction.

### B. Plaintiff Margie Stewart's Testimony

Margie Stewart's testimony was presented in order to prove the plaintiffs' loss of consortium claim. This claim is necessarily predicated on Mr. Stewart's negligence claim; that is, if the defendant is not liable for negligence then it cannot be liable for Margie Stewart's claim for loss of consortium. Margie Stewart's testimony provides absolutely no evidence concerning who actually placed the object that fell on Kirk Stewart against the wall, as such it in no way helps the plaintiffs defend against this motion for judgment as a matter of law.

### C. Alonzo Jones's Testimony

Unfortunately for the plaintiffs, their witness Mr. Alonzo Jones failed to corroborate Mr. Stewart's version of the facts, not even the presence of the defendant's trailer at the work-site, let alone establish any connection between the defendant's activities at the Chrysler plant and the object stacked against

the wall. Mr. Jones testified to the presence of a dumpster next to the picnic tables. He provided absolutely no evidence as to whom this dumpster belonged, however. (*Id.* at 88.) In fact, the only evidence that Mr. Jones was sure of was that a shelf-like object, in close proximity to the picnic tables, fell on Mr. Stewart. (*Id.* at 125.) As such his testimony simply does not help the plaintiffs defend against this motion.

Mr. Jones testified that he could not now recollect whether there were other contractors on the site but in his deposition he said that he recalled a contractor with an Italian name, "it started with an R, R-e-m or something, or something." (*Id.* at 117.) He did not recall seeing the name "Walbridge, Aldinger." (*Id.*) At trial Mr. Jones couldn't recollect whether Chrysler was in the process of taking out old racks and replacing them with new ones but in his deposition the following exchange occurred:

Q: "They have been described by somebody, Mr. Stewart, as being some of the shelving that was inside the building where things were stored."

A: "They must have been old ones. They were big. They were ..."

Q: "But they were like a shelf that had been used inside the Chrysler plant?"

A: "Right."

Q: "You had seen similar shelves?"

A: "But, see, they took some old ones out and they put new ones in. They took the old ones out."

Q: "When did they take the old ones out? Recently?"

A: "I don't know. They were taking them out way back. And I don't know whether these guys took it upon themselves to put them out of the way over there and they decided just to put them over the material they had stacked over there or what."

*Id.* at 119–22.

▆ Taken in the light most favorable to the plaintiff, Mr. Jones's testimony confirms that there was a dumpster in close proximity

to the picnic tables, that there was a trailer, although not defendant's, on the site, and that Mr. Stewart was indeed injured by a falling shelf-like object, albeit one that was like the kind Chrysler uses or used.

### D. Floyd Gibbs's Testimony (Project Superintendent)

Mr. Floyd Gibbs, an employee of Walbridge before he retired, had held the job of Project Superintendent for approximately 30 years, and he was the Project Superintendent at the site for Walbridge. (D.I. 52, Vol. A., App. at 27 ["Deposition"]) [3] Mr. Gibbs was stationed at the site during the workweek in a trailer and would supervise the subcontractors and make sure everything was proceeding according to plan. He was at the site some Saturdays, and on Saturday, June 8, 1991, in particular, two days before the injury. (Deposition at 51.) He testified at his deposition that the construction site was prepared in a way such that it would not interfere with Chrysler's production and he complied with this requirement on Saturday, June 8. In addition, he inspected the site on Monday morning, June 10, 1991, the day of the injury, at approximately 7:00 A.M. and again at 9:00 A.M. or 10:00 A.M. and there was nothing unusual. (Deposition at 67–68.) He further testified that he had seen racks of the sort described by Mr. Stewart inside the Chrysler plant used by Chrysler for receiving and storing materials. (Deposition at 25.)

### E. Charles Raymond Pfeifer, Jr.'s Testimony (Project Manager)

Mr. Charles Raymond Pfeifer, Jr. ("Pfeifer") is an employee of Walbridge and was Project Manager of the construction at the Chrysler Plant. Mr. Pfeifer explained the difference between the duties of a project superintendent and a project manager. A project superintendent is responsible for the day-to-day activities that occur on the project, *i.e.* the coordinating of the subcontractors. The project manager's duties were to

---

**3.** Mr. Gibbs was unable to attend the trial due to a severe and prolonged illness. His deposition was read to the jury.

take and oversee the cost or the monetary side of the project (i.e. the invoicing, the quoting of the change orders, and the public relations with the customer). (D.I. 52, Vol. B. at 1–6.) Mr. Pfeifer visited the site approximately every two to three weeks. (*Id.* at 6.) Mr. Pfeifer has worked on other construction projects at automotive plants for Walbridge in excess of 35–40 times. At trial Mr. Pfeifer established the procedure that is followed when injuries occur:

> Q.: "Have you ever been at a job site where there's an injury that has occurred where you're the general contractor and there's an allegation that your subs or your people were involved in some way?"
>
> A.: "Yes, I have been."
>
> Q.: "Can you tell me about how many times?"
>
> A.: "A couple times."
>
> Q.: "And at those locations and those times, what did the owner do when they believed there was some activity that might have led to an injury of one of their employees in your work site?"
>
> A.: "They immediately notify the superintendent and myself, at which time I would take and notify the safety director, and him and I would have to immediately report to the site to investigate the allegation."
>
> Q.: "I think you told us that Chrysler would have immediately notified Mr. Gibbs. And what would have happened at that point?"
>
> A.: "Mr. Gibbs would have immediately notified myself, at which time I would have notified the safety director for Walbridge, and him and I would have been on a plane immediately, going to the job site to do an investigation."
>
> Q.: "Were you ever called out for the June 10, 1991 incident with Mr. Stewart to go to the job site to investigate?"
>
> A.: "No, I was not."

*Id.* at 27–28.

Mr. Pfeifer's uncontested testimony, taken from his experience of in excess of 35 construction projects at automotive plants established, even in the light most favorable to the plaintiff, that if there was a connection between a contractor's work and a plant employee's injury, the plant would immediately notify the contractor. No such notification was forthcoming here.

### IV. *Conclusion*

This Court after reviewing the trial evidence in the light most favorable to the plaintiffs and without weighing or judging the credibility of the witnesses, finds and concludes that the plaintiffs have failed to provide legally sufficient evidence to withstand defendant's motion for judgment as a matter of law. The plaintiffs have submitted no evidence tending to show that the defendant placed the object against the wall or was responsible for the area near the picnic table, and thus that the defendant breached any duty, or even owed any duty to the plaintiffs. Furthermore, although the plaintiffs have, by their own as well as expert medical testimony, demonstrated that Mr. Stewart was injured, this injury has not been linked, in a causal sense, to the defendant's alleged negligence, either proximately or in any other way. In sum, the evidence presented at trial, even when taken in the light most favorable to the plaintiff, simply does not present a legally sufficient quantum of evidence to merit denial of this motion. The Court will enter an order granting defendant's motion for judgment as a matter of law.